**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRADITION MEDIA GROUP, LLC, | ) | |
| | ) | Case No. 1:21-cv-4471 |
| Plaintiff, | ) | |
| v. | ) | Judge John F. Kness |
| | ) | |
| US BANK NATIONAL ASSOCIATION, | ) | Magistrate Judge Maria Valdez |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO U.S. BANK'S STATEMENT OF FACTS AND
STATEMENT OF ADDITIONAL MATERIAL FACTS REQUIRING
<u>DENIAL OF U.S. BANK'S MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Local Rule 56.1(b), Plaintiff Tradition Media Group, LLC ("TMG") hereby

submits the following response to Defendant U.S. Bank N.A.'s ("Defendant") Statement of Facts

in support of Defendant's motion for partial summary judgment.

1.     TMG contends that it (1) owns U.S. Trademark Registration No. 6,014,321 for
the mark MAXCASH, (2) owns U.S. Trademark Registration No. 6,014,322 for the mark MAX
CASH and Design and (3) owns common law rights in the marks MAX CASH and MAXCASH
for consumer loan brokerage services. (Ex. 1, Amended Complaint, ¶¶ 8-10.)

**RESPONSE**:  Not disputed for purposes of summary judgment.

2.     TMG also contends that the company has been marketing its services under those
marks in 49 States since at least 2015.  (Ex. 1, Amended Complaint, ¶ 10.)

**RESPONSE**:  Not disputed for purposes of summary judgment.

3.     The U.S. Patent and Trademark Office ("USPTO") initially refused TMG's
trademark applications under Section 2(d) in view of a registration for a MAX logo in class 36
owned by MAX Credit Union in Alabama, Reg. No. 3598443.  The MAX Credit Union
registration covered various banking and loan services including specifically "Credit card and
debit card services." (Ex. 3, Application File History, TMG00139-287 at TMG00148-49, 153.)

**RESPONSE:**   TMG does not dispute these specific facts for purposes of summary

judgment, but this wording is misleading because other services also covered by that MAX

1

Credit Union registration include: "Financing and loan services," "Insurance brokerage," "Mortgage lending," and "On-line banking services." ECF No. 106-1 p. 52.

4.      TMG submitted a response to this refusal on April 11, 2019. (Ex. 3, Application File History, TMG00139-287 at TMG00191-194, 198-201.)

**RESPONSE:** Not disputed for purposes of summary judgment.

5.      Following the withdrawal of the 2(d) refusal, TMG attempted to amend its application to cover "issuing of credit cards" and "credit card and debit card transaction processing services." The USPTO examiner refused this amendment because she concluded such services were outside the scope of the application that was filed. (Ex. 3, Registration Application TMG00139-287 at TMG00199-200.)

**RESPONSE:** Not disputed for purposes of summary judgment.

6.      In its written response to the USPTO's refusals under Section 2(d), TMG stated to the USPTO that "MAX CASH suggests 'cash to the max', with the term max being slag for the fullest amount." (Ex. 3, Registration Application TMG00139-287 at TMG00193.)

**RESPONSE:** Not disputed for purposes of summary judgment.

7.      TMG admits that it chose the term "max cash" to convey to consumers that they could receive the "most money possible" by using TMG's loan services. (Ex. 9, Deposition of Fred Winchar, 120:5-16, 121:14-24.)

**RESPONSE:** Denied, on the grounds that the phrase "most money possible" was paraphrasing by the attorney taking the deposition. Mr. Winchar actually said he wanted to convey that his company was a place where consumers could "get the most money or the fastest service." He also said that a company name was "a stamp in and of itself," meaning that it cannot be reduced to the individual meanings of component words. Defendant's Ex. 9, 120:5 – 121:11.

8.      In its own documents, TMG has stated: "Our affiliate manager can hook you up with some awesome solutions to ***speed up your journey to MaxCash!***" (Ex. 5, TMG01200.)

**RESPONSE:** Admitted that the stated sentence appears in the specified document. Denied that in that original document, the sentence had any emphasis on the final six words.

9.      TMG most often presents its purported mark to consumers as one word, with no space between the "Max" and "Cash." TMG's registration likewise covers MAXCASH, with no

space between the words.  (Ex. 3, Registration Application TMG00139-287 at TMG00285.)

**RESPONSE:**  TMG disputes the first sentence, on the grounds that it actually uses the variants with and without the space between "max" and "cash" interchangeably, sometimes within the same document.  TMG00489-93, attached hereto as Exhibit A;  September 21, 2023 Declaration of Patrick McDermott ("Sept. McDermott Dec."), filed herewith, at ¶ 18 and Exhibit B thereto.  TMG does not dispute the second sentence for purposes of summary judgment.

10.    TMG's purported mark is used on, www.maxcash.com or www.maxcashtitleloans.com, a website devoted entirely to automobile title loans. (Ex. 10, Deposition of Patrick McDermott, 112:1-8.)

**RESPONSE:**    Partially disputed.    It is only TMG's website at www.maxcashtitleloans.com which is devoted to automobile title loans.  TMG's website at www.maxcash.com offers consumers a wide variety of loans, including personal loans and installment loans.  Sept. McDermott Dec. Exhibit B.

11.    On the www.maxcashtitleloans.com website, TMG's purported mark is depicted as a "lockup" with the words "title loans" and without a space between the words "max" and "cash":    .  On www.maxcash.com, TMG uses a similar logo that does not include the words "title loans":    .  (Ex. 4, Registration Application TMG00288-428 at TMG00294; Ex. 9, Winchar Dep., Dep. Exhibits 10 and 34.)

**RESPONSE:**  TMG does not dispute that the specific design marks pictured in this paragraph appear on the respective websites indicated.  TMG disputes the implication that these are the only version of "TMG's purported mark" appearing on such websites, because both of those websites include instances of both text variants of TMG's relevant mark, namely MAXCASH and MAX CASH.

12.    TMG maintains a website at https://traditionmediagroup.com. At least prior to U.S. Bank's deposition of TMG in this matter, this website invited visitors to "meet our companies" and provided links to websites for (1) Max Cash, (2) TMG Loan Processing, (3) Champion Title Loans, and (4) Title Loans King.  Except for the Max Cash website, these other websites did not use the purported "max cash" trademark. (Ex. 9, Winchar Dep., 83:20-22, 85:4-

6, 88:2-8, and Dep. Exhibits 6, 7, 8, 9.)

**RESPONSE:** Not disputed for purposes of summary judgment.

13.     At least prior to U.S. Bank's deposition of TMG in this matter, TMG also maintained a website for "Tradition One Media" offering similar auto title loan services as on TMG's other websites. TMG admits that Tradition One Media is a fictitious business name for TMG. The Tradition One Media website did not use the purported "max cash" trademark. (Ex. 9, Winchar Dep., at 80:2-5, 81:15-19, and Dep. Exhibit 5.)

**RESPONSE:** Not disputed for purposes of summary judgment.

14.     TMG claims to "operate as a brokering service" that connects consumers with third-party lenders or provides consumer data to those lenders, who then offer consumers particular lending products. These third-party lenders do not offer "max cash" branded products. Other than a small number of "consumer review" websites, TMG does not give any third-party permission to use the purported mark "max cash".  (Ex. 10, McDermott Dep., 32:15-18, 33:5-12, 80:4-81:6; See Ex. 11, Continued Deposition of Patrick McDermott, 6/6/23, 115:14-116:6; Ex. 9, Winchar Dep., 33:24-34:15 and 238:8-21.)

**RESPONSE:** Not disputed for purposes of summary judgment.

15.     TMG's Fred Winchar admits that "what TMG wants to do in its business is try to get individuals that are looking for a loan to enter their information onto a website form or give you [TMG] their information at one of your [TMG's] call centers." (Ex. 9, Winchar Dep., 42:3-8.)

**RESPONSE:** Not disputed for purposes of summary judgment.

16.     TMG admits that:
   a.     it is not a bank;
   b.     it is not a credit union;
   c.     it does not lend money to anyone and has never offered any direct lending on any of its products or services;
   d.     it does not underwrite any loans;
   e.     it does not hold deposits for others;
   f.     it does not advertise its services at bank branches;
   g.     it does not engage in direct mail advertising;
   h.     it does not hold any state or federal banking charters;
   i.     it does not hold any insurance, licenses, or approvals from the Federal Deposit Insurance Corporation (FDIC);
   j.     it does not issue securities of any sort; and
   k.     it has no relationship with Visa, Mastercard, American Express, or Discover. (Ex. 9, Winchar Dep., 261:24-263:6; Ex. 10, McDermott Dep., 129:15-19.)

**RESPONSE:** Not disputed for purposes of summary judgment.

17.     TMG does not advertise within Elan Financial Service's partner bank branches or on their websites. (*See* Ex. 16, Plaintiff's Response to Defendant's First Set of Interrogatories, Interrogatory No. 4 at p. 5.)

**RESPONSE:** Not disputed for purposes of summary judgment.

18.     TMG claims that since 2009, TMG's purported predecessor QuadW International was a "lead generation firm" that sold consumer data for auto title loans under the business name Max Cash Title Loans. (Ex. 1, Amended Complaint, ¶ 5; Ex. 10, McDermott Dep., 127:17 - 128:21.)

**RESPONSE:** Not disputed for purposes of summary judgment.

19.     TMG admits that automobile title loans are "generally considered subprime loans," meaning loans made to individuals "that are credit challenged" and subprime credit generally refers to individuals with a credit score of less than 620.  (Ex. 9, Winchar Dep., 88:19-89:15.)

**RESPONSE:** Not disputed for purposes of summary judgment.

20.     Sometime between 2013 and 2015, TMG asserts that its purported predecessor, QuadW International, began to broker loans (i.e., sell leads that are funded) for loan types other than automobile title loans. (Ex. 10, McDermott Dep., 129:10-14.)

**RESPONSE:** Not disputed for purposes of summary judgment.

21.     In January 2015, TMG was created and continued to function as a consumer loan brokering service, just as QuadW International had. (Ex. 10, McDermott Dep., 33:5-12, 125:20-22, 127:10-12, and 130:1-8.)

**RESPONSE:** Not disputed for purposes of summary judgment.

22.     TMG and QuadW International are separate legal entities but have common ownership.  (Ex. 9, Winchar Dep., at 15:7-16:13.)

**RESPONSE:** Not disputed for purposes of summary judgment.

23.     . (Ex. 10, McDermott Dep., 79:22-81:9, 85:11-17, 89:14-90:5, 90:6-91:6 and 92:16-18.)

**RESPONSE:** Not disputed for purposes of summary judgment.

24.     While TMG purports to offer a variety of services and products, its "core" business ███████████████████████ remains selling leads for automobile title

loans. (Ex. 9, Winchar Dep., 43:15-23 and 145:18-146:1.)

      **RESPONSE:**  Not disputed for purposes of summary judgment.

      25.     TMG does not know what type of loan any specific consumer ultimately receives from a third party lender. TMG can only speculate on the type of loan based on the dollar amount funded. TMG speculates that the "vast majority" of TMG customers who are funded with any loan type other than an automobile title loan are funded with a "payday loan or installment loan." (Ex. 9, Winchar Dep., 45:21-46:9 and 148:5-16.)

      **RESPONSE:**  Not disputed for purposes of summary judgment.

      26.    ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (Ex. 9, Winchar Dep., 184:10-19, 188:20-190:2, and Dep. Exhibit 30.)

      **RESPONSE:**  Not disputed for purposes of summary judgment.

      27.     TMG uses approximately 600 "affiliates" to refer potential customers to TMG. TMG has not permitted any affiliate to use the Max Cash mark on their websites. Affiliates are third parties that have signed up with TMG and either (a) host a website ad for title loans or TMG's other services that redirects a user to a TMG website or (b) try to get consumers to enter personal information on their websites and then provides that consumer information to TMG. (Ex. 10, McDermott Dep., 142: 9-11, 154:5-10; Ex. 9, Winchar Dep., 74:8-14, 75:22-77:1, 168:14-24.)

      **RESPONSE:**  Not disputed for purposes of summary judgment.

      28.     TMG has never offered any credit card directly. (Ex. 10, McDermott Dep., 163:21-23.)

      **RESPONSE:**   The statement in paragraph 28 is misleading.  Mr. McDermott's deposition testimony is actually that TMG does not "provide" the credit card.  Instead, TMG connects consumers with credit card providers.  Defendant's Ex. 10, McDermott Dep., 163:18 – 164:2.

      29.     TMG has never offered any "Max Cash" or "MaxCash" branded credit cards. TMG's Patrick McDermott admits that TMG has no plans to offer any "Max Cash" branded credit card in the future. (Ex. 10, McDermott Dep., 214:23-215:8.)

      **RESPONSE:**  Not disputed for purposes of summary judgment.

      30.    ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■



████████████████████████████████████████████████
██████████████████████████████████ (Ex. 16, TMG's Response to Defendant's First Set of Interrogatories, Interrogatory No. 2, at p. 5; Ex. 17, TMG's Second Amended Response to Interrogatory No. 16; Ex. 10, McDermott Dep., 178:4-20, 182:14-185:21, Dep. Exhibit 17 and 205:15-206:14, 211:10-212:7; Ex. 9, Winchar Dep., 110:21-112:12 and Dep. Exhibits 16 and 17.)

**RESPONSE:** The first sentence in paragraph 30 is misleading, as TMG's activities relating to ████████ are not limited to the content discussed in the remainder of this paragraph. In addition, the citations to the record do not support the inference that ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ For purposes of summary judgment TMG does not dispute the content of the sentence beginning with the word "First."

31.    ██████████████████████████████████████
████████████████████████████████████████████████
██████████ (Ex. 16, TMG's Response to Defendant's First Set of Interrogatories, Interrogatory No. 2, at p. 5; Ex. 10, McDermott Dep., 176:22-177:1, 177:19-178:20, 198:22-199:7, 200:3-7; Ex. 9, Winchar Dep., 115:11-116:6 and Dep. Exhibits 18 and 19.)

**RESPONSE:** Not disputed for purposes of summary judgment.

32.    ██████████████████████████████████████
████████████████████████████████████████████████
████████████████████████ (Ex. 17, TMG's Second Amended Response to Interrogatory No. 16; Ex. 11, Continued McDermott Dep., 90:7-13, 93:11-13, 103:6-8, and 106:8-107:6.)

**RESPONSE:** Not disputed for purposes of summary judgment.

33.    TMG does not know the credit scores of consumers for whom it brokers loans. (Ex. 9, Winchar Dep., 152:11-15.9.)

**RESPONSE:** Not disputed for purposes of summary judgment.

34.    TMG "offers and sells its services to individuals who are 18 years old and older"

throughout the United States (except for the state of New York). (Ex. 16, Plaintiff's Response to Defendant's First Set of Interrogatories, Interrogatory No. 5, at p. 6.)

**RESPONSE:** Not disputed for purposes of summary judgment.

35. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



(Ex. 17, Plaintiff's Second Amended Response to Interrogatory No. 16, at p. 2.)

**RESPONSE:** Not disputed for purposes of summary judgment.

36. U.S. Bank, doing business as, Elan Financial Services, partners with certain third-party institutions, which are mostly small regional banks and credit unions, to provide revolving credit card accounts and associated services to individual consumers. (Ex. 2, Defendant's Answer to Amended Complaint, ¶¶ 7, 11, 12; Ex. 14, Deposition of John Owens, 27:6-12.)

**RESPONSE:** Not disputed for purposes of summary judgment.

37. In December 2020, U.S. Bank launched the Visa Max Cash Preferred Card by making it available to its Elan Financial partners. In December 2021, U.S. Bank launched the Visa Signature Max Cash Secured Card by making it available to its Elan Financial partners. (Ex. 12, Deposition of Chris Roncari, 93:10-13; Ex. 2, Defendant's Answer to Amended Complaint, ¶¶ 12, 14, 22.) (The Max Cash Preferred Card and Max Cash Secured Card are collectively referred to as the "Accused Cards.")

**RESPONSE:** Not disputed for purposes of summary judgment.

38. U.S. Bank's advertisements and brochures often refer to the Accused Cards in their entirety: Visa Max Cash Preferred and Visa Max Cash Secured. (Ex. 6, U.S. Bank Brochure, USB_000000425 and U.S. Bank Digital Advertisements, USB_000000196 and USB_000000122.)

**RESPONSE:** Not disputed for purposes of summary judgment.

39. U.S. Bank's witnesses testified that U.S. Bank chose the name Max Cash Preferred in large part because it described an appealing cash rewards program that provided "the most amount of cash back" for any credit card in the industry. (Ex. 12, Roncari Dep., 46:12-

47:14; Ex. 13, Deposition of James Poluch, 141:2-20.)

**RESPONSE:** Not disputed for purposes of summary judgment.

40. U.S. Bank's presentations and emails relating to the naming process for the Max Cash Preferred card discuss the descriptive qualities of the name, including that the name indicates an appealing cash rewards program. For example, one naming presentation states with respect to Max Cash Preferred: "The Max Cash Preferred card lets you pick the categories you prefer so you can get the maximum cash back." (Ex. 6, Barkley Research 4/24/2020 Presentation, USB_00000001-23 at USB_00000011; Ex. 6, Barkley Research 5/14/2020 Presentation, USB_00000038-47, at USB_00000040-41; Ex. 6, USB_00000627.)

**RESPONSE:** Not disputed for purposes of summary judgment.

41. The Accused Cards are cash back rewards credit cards offered through U.S. Bank's Elan partner institutions, which are mostly small regional banks and credit unions. In addition, the Accused Cards are targeted at existing customers of those banks and credit unions. (Ex. 13, Poluch Dep., 46:12-17, 53:21-24, 85:11-23; Ex. 14, Owens Dep., 27:6-12.)

**RESPONSE:** TMG does not dispute the first sentence for purposes of summary judgment. TMG disputes the implication in the second sentence that the Accused Cards are targeted exclusively at existing customers of Defendant's partner institutions. The Accused Cards are also offered to the public at large, such as through the websites of those partner institutions. October 19, 2022 Deposition of John Owens ("Owens Dep."), attached hereto as Exhibit B, 31:24 – 33:6 and Dep. Ex. 52.

42. U.S. Bank has produced records of the quantity of account holders for the Accused Cards. These accounts fall into two categories: (1) new or "organic" accounts and (2) "converted" accounts. New or organic accounts are those accounts where a customer simply applied for and received an Accused Card. Converted accounts are those where an existing bank customer had a different Elan credit card and their accounts were simply "converted" to the new Visa Max Cash Preferred or Max Cash Secured card without any action by the consumer. More than half of Visa Max Cash Preferred card holders are "converted" accounts. (Ex. 18, U.S. Bank's Second Supplemental Response to Plaintiff's Interrogatory No. 1, dated 8/26/22 at 4; Ex. 15, Deposition of John Lam, 16:9-17:12.)

**RESPONSE:** Not disputed for purposes of summary judgment.

43. U.S. Bank advertises the Max Cash Preferred card through various channels, all of which market to Elan partner financial institution's existing customers: partner financial institution retail branches and call centers, digital advertisements for the partner financial institution's public-facing website, targeted digital marketing to a partner financial institution's

existing customers, direct mail to partner financial institution customers, and direct emails to partner financial institution's existing customers. Max Cash Secured card is offered on a "reactive basis" and not proactively offered. (Ex. 13, Poluch Dep., 43:21-44:2, 47:8-13, 49:23-51:7, 52:24-53:16, 53:21-24, 54:13-55:3, and 116:4-14; Ex. 19, U.S. Bank's Answers to Plaintiff's Fifth Set of Interrogatories, Interrogatory No. 7.)

**RESPONSE:** TMG does not dispute the identification of the various channels through which the Max Cash Preferred card is marketed. TMG disputes the implication that the Accused Cards are targeted exclusively at existing customers of Defendant's partner institutions. TMG also disputes that the Max Cash Secured car is not proactively offered to the public. Both Accused Cards are offered to the public at large, such as through the websites of those partner institutions. Owens Dep., Ex. B hereto, 31:24 – 33:6 and Dep. Ex. 52.

44.     U.S. Bank does not promote or market the Max Cash Preferred or Max Cash Secured cards through television, digital video (e.g., Youtube), social media (e.g., Facebook), radio, podcast, newspaper, magazines, billboards, or at tradeshows. U.S. Bank does not promote the Accused Cards on its webpage or at U.S. Bank branches. (Ex. 22, Declaration of James Poluch, ¶¶ 4-5.)

**RESPONSE:** Not disputed for purposes of summary judgment.

45.     Applying for one of the Accused Cards requires the consumer to complete an application, providing sensitive personal information, including a social security number, and submit to a credit check. (Ex. 6, Visa Credit Card Application, USB_00000206-08.)

**RESPONSE:** Not disputed for purposes of summary judgment.

46.     ███████████████████████████████████████████████████████████ .
These Accused Cards represent a fraction of one percent of the credit card market in the United States, which consists of hundreds of millions of accounts. (Ex. 18, U.S. Bank's Second Supplemental Response to Plaintiff's Interrogatory No. 1, dated 8/26/22 at 4; Ex. 21, Declaration of Christopher Roncari, ¶¶ 5-6 and Decl. Exhibit A at p. 26.)

**RESPONSE:** Not disputed for purposes of summary judgment.

47.     Merriam Webster Dictionary defines the word "max" as "maximum." (Ex. 8, Excerpts of Merriam Webster Dictionary at USB_00002538.)

**RESPONSE:** Not disputed for purposes of summary judgment.

48.     Merriam Webster Dictionary defines the word "cash" as "ready money," "money

or its equivalent," or as a verb meaning to "pay or obtain cash." (Ex. 8, Excerpts of Merriam Webster Dictionary at USB_00002543.)

      **RESPONSE:** Not disputed for purposes of summary judgment.

      49.     TMG admits that it has not licensed or given permission for any third-party to use its purported Max Cash trademark, other than a small number of "consumer review" websites. TMG admits that any other use of "Max Cash" by third-parties on the internet is without TMG's license or permission. (Ex. 9, Winchar Dep., 238:14-21.)

      **RESPONSE:** Not disputed for purposes of summary judgment.

      50.     Third parties on the internet are using or have used the phrase "max cash" as a part of company names, product names, taglines, or descriptions, including companies offering financial services and services related to vehicles. (Ex. 7, Third Party Usage at USB_00002272 (Max Tool's "Max Cash" store credit); USB_00002279 (Max Cash ATM Services); USB_00002281 (Max Allowance's reference to "MAXcash"); USB_00002284, 2287, 2288, 2297 (Max Cash for Junk Cars); USB_00002693 (Mobile App "Max Cash"); USB_00002695 (Max Cash USA); USB_00002336 (Car Gurus' "Instant Max Cash Offer"); USB_00002427 (Auto Buy and "max cash for your car"); USB_00002432 (Mitsubishi dealership "Max Cash Offer"); USB_00002464 (Max Cash Express); USB_00002468 (metal recycling and "max cash thresholds"); Ex. 23, Declaration of Robert Leighton, ¶¶ 2-4; Ex. 24, Declaration of Addison Leavy, ¶¶ 2-3.

      **RESPONSE:** For purposes of summary judgment, TMG does not dispute the existence of such uses. For the reasons discussed in Part I-B of TMG's memorandum opposing Defendant's motion for summary judgment, TMG disputes the relevance of the vast majority of such uses.

      51.     TMG signed a settlement agreement with Max Cash ATM that does not obligate Max Cash ATM to cease using the name. (Ex. 9, Winchar Dep., 256:6-22 and Dep. Exhibit 50.)

      **RESPONSE:** Not disputed for purposes of summary judgment.

      52.     TMG's Fred Winchar testified that he believes Max Cash ATM will cause confusion even though his co-owner, Patrick McDermott, signed the settlement agreement and has permitted Max Cash ATM to continue using the name. (Ex. 9, Winchar Dep., 256:6-16.)

      **RESPONSE:** Not disputed for purposes of summary judgment.

      53.     Multiple companies, including one operating in Phoenix, Arizona, in the business of purchasing homes, use the phrase or call themselves "MAXCASH" or "Max Cash Offer." (Ex. 7, Third Party Usage at USB_00002276, 2399, 2309, 2385, 2388, 2390, 2403, 2406, 2409; Ex. 23, Leighton Decl., ¶¶ 2-4; Ex. 24, Leavy Decl., ¶¶ 2-3.)

**RESPONSE:** Not disputed for purposes of summary judgment.

54. Third parties on the internet are using or have used the phrase "cash max" as a part of company names, product names, taglines, or descriptions, including title loan companies and loan brokers. (Ex. 7, Third Party Usage at USB_00002424, 2425 (Title Loan companies); USB_00002418 (loan broker CashPotUSA offering "cash max loan"); Ex. 24, Leavy Decl., ¶¶ 2-3.)

**RESPONSE:** Not disputed for purposes of summary judgment.

55. Third parties on the internet are using or have used the phrase "maximize cash" or similar descriptors when talking about getting the most out of cash back credit card rewards programs. (Ex. 7, Third Party Usage at USB_00002447 (telhio Credit Union describing cards that can "maximize cash back"); USB_00002448 (Japser.com website using the phrase "maximize cash back"); USB_00002453 (Creditcards.com website discussing "How to maximize Discovery it Cash Back's benefits"); USB_00002470 (YoursBulletin.com website discussing how one can "Maximize your cash back"); USB_00002474 (Heritage Grove Credit Union describing how to "maximize cash-back"); USB_00002497 (CNBC article discussing credit cards and "maximizing cash back"); USB_00002502 (NextAdvisor article discussing how to "maximize" rewards on cash back credit cards); Ex. 24, Leavy Decl., ¶¶ 2-3.)

**RESPONSE:** Not disputed for purposes of summary judgment.

56. Third parties on the internet, including financial institutions, use the words "cash," "max," or "maximum" as part of a name for "cash back" credit cards. (Ex. 7, Third Party Usage at USB_00002341 (Citi Custom Cash, Citi Double Cash, Bank of America Customized Cash Rewards, Bank of America Unlimited Cash Rewards, Capital One Quicksilver Cash Rewards, Discover it Cash Back); USB_00002383 (U.S. Bank Premier Cash Rewards); USB_00002434 (U.S. Bank Cash+); USB_00002437 (U.S. Bank Cash Rewards); USB_00002459 (Max Rewards Visa); USB_00002507 (U.S. Bank Triple Cash Rewards); USB_00002541 (U.S. Bank Business Cash Rewards); Ex. 24, Leavy Decl., ¶ 2-3.)

**RESPONSE:** Not disputed for purposes of summary judgment.

57. Third parties on the internet, including banks, refer to "maximum cash" or "maximizing cash" in other contexts, including ATM withdrawal limits and maximizing cash flows. (See, e.g., Ex. 7, Third Party Usage at USB_00002374; USB_00002451; USB_00002457; USB_00002479; USB_00002495; USB_00002516; Ex. 24, Leavy Decl., ¶ 2-3.)

**RESPONSE:** Not disputed for purposes of summary judgment.

58. Third parties on the internet, including banks and credit unions, are using or have used the term "max," standing alone, in connection with a wide variety of financial services, including MAX Credit Union. (See, e.g., Ex. 3, Application File History TMG00139-287 at TMG00153.)

**RESPONSE:** Not disputed for purposes of summary judgment.

59.     TMG admits that multiple other companies in the title loan space use the words "max" and "cash" in connection with their products, including Title Max and MAXMONEY (Ex. 16, Plaintiff's Response to Defendant's First Set of Interrogatories, Interrogatory Nos. 14-15, at pp. 10-11.)

**RESPONSE:** Not disputed for purposes of summary judgment.

60.     Third parties on the internet, such as LoanMax and MaxLoan, are using or have used the terms "max" and "cash" in connection with loan services. (Ex. 7, Third Party Usage at USB_00002395 and 2411; Ex. 24, Leavy Decl., ¶ 2-3.)

**RESPONSE:** Not disputed for purposes of summary judgment.

61.     Survey expert Hal Poret performed a consumer survey on the topic of whether the term MAXCASH has acquired secondary meaning as a source identifier for TMG or its services. A true and correct copy of Mr. Poret's Secondary Meaning Survey Report, dated May 2022, is attached here as Exhibit 26.

**RESPONSE:** For purposes of summary judgment TMG does not dispute that Mr. Poret

created the identified survey and report.

62.     Mr. Poret also performed a reverse confusion survey: a survey of whether U.S. Bank's use of the term "max cash" as part of its credit card names caused consumers of TMG's services to be confused into believing that TMG's services are somehow affiliated with U.S. Bank or the Accused Cards.  A true and correct copy of Mr. Poret's Reverse Confusion Survey Report, dated November 2022, is attached here as Exhibit 27.

**RESPONSE:** For purposes of summary judgment TMG does not dispute that Mr. Poret

created the identified survey and report.

63.     Mr. Poret also performed an attribution survey related to the term "Max Cash." The attribution survey includes questions regarding how consumers weigh the importance of various card features. A true and correct copy of Mr. Poret's attribution survey, dated January 2023, is attached here as Exhibit 28.

**RESPONSE:** For purposes of summary judgment TMG does not dispute that Mr. Poret

created the identified survey and report.

64.     TMG's interrogatory response points to three purported instances of confusion, which allegedly occurred during phone calls between TMG and customers on the following dates: January 10, 2022, January 29, 2022, and February 4, 2022. ████████████████████
████████████████████████████████████████████████████████. (Ex. 16, Plaintiff's Response to Defendant's First Set of Interrogatories, Interrogatory No. 10, at pp. 7-8; Ex.

25, Transcripts of 1/29/23 and 2/4/23 audio recordings; Ex. 23, Leighton Decl., ¶ 5; Ex. 10, McDermott Dep., 308:5-19 and Dep. Exhibit 28; 315:5-8 and Dep. Exhibit 31; 316:24-317:2, 320:3-7, 323:11-14, and Dep. Exhibit 32.)

**RESPONSE:** Not disputed for purposes of summary judgment.

65. TMG's www.maxcash.com website has mentioned "credit cards." (Ex. 9, Winchar Dep., Dep. Exhibit 10.)

**RESPONSE:** Not disputed for purposes of summary judgment.

66. TMG's online advertisements for its purported "MaxCash" mark consist of paid search advertising on Google, TMG's websites including maxcashtitleloans.com and maxcash.com, and branded ads on social media (Facebook, Twitter, and TikTok). TMG's Patrick McDermott testified that the only internet advertisements for the Accused Cards of which he is aware are internet search results and Elan partner institution webpages. (Ex. 20, Plaintiff's Second Amended Response to Interrogatory No. 18, at p. 5; Ex. 11, Continued McDermott Dep., 34:14-36:5, 41:16-24, 42:1-45:16.)

**RESPONSE:** Not disputed for purposes of summary judgment, although TMG disagrees

that this paragraph contains a full description of its online and digital advertisements.

67. TMG's Fred Winchar admits that TMG's reputation "is as good today as it's ever been." (Ex. 9, Winchar Dep., 258:16-21.)

**RESPONSE:** Not disputed for purposes of summary judgment.

68. TMG's Fred Winchar admits that TMG has not been harmed by U.S. Bank's credit cards other than by TMG spending money on this lawsuit and an assertion that TMG's purchase of certain internet "ad words" has become more expensive. (Ex. 9, Winchar Dep., 259:18-260:19.)

**RESPONSE:** TMG disputes the implication that the types of harm described in

paragraph 68 are the only types of harm TMG has suffered. In addition, TMG disputes that this

paragraph even accurately recounts all of the types of harm Mr. Winchar mentioned. He also

stated that needing to spend money on this lawsuit lowered TMG's marketing budget, which in

turn caused TMG to make fewer sales than it would have otherwise made. Defendant's Ex. 9,

Winchar Dep., 259:18-260:19.

**STATEMENT OF ADDITIONAL MATERIAL FACTS REQUIRING
DENIAL OF U.S. BANK'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(b), TMG hereby submits the following additional material facts requiring denial of Defendant's motion for summary judgment. For clarity, TMG will begin numbering these additional paragraphs at 50, so as to follow sequentially the 49 paragraphs of material facts TMG submitted on August 14, 2023. *See* ECF No. 111.

50. The company called Max Cash ATM Services does not lend money, but instead places its own physical ATM machines in third party businesses. ECF No. 106-2 p. 11.

51. The check-cashing business in Texas called Max Cash Express does not lend money, but instead offers simpler retail-level services such as check cashing, electronic bill payment, and money orders. A copy of that company's web page describing its services as of September 10, 2023 is attached hereto as Exhibit C.

52. After hearing TMG's argument that "max cash" was a slang reference for the fullest amount of cash, the USPTO Examining Attorney for TMG's Trademark Application Serial No. 88/004,966 did not issue any further Office Actions or otherwise respond with any objection that she considered "max cash" descriptive for TMG's applied-for services. ECF No. 112-2; ECF No. 106-1 at pp. 94-97, 101-05.

53. TMG and its sibling company QuadW International have continuously operated a consumer-facing loan services company under the public name and mark MAXCASH since 2009. Declaration of Patrick McDermott ("Sept. McDermott Dec."), filed herewith, ¶ 4. QuadW and TMG are both owned by the same three individuals. Transcript of October 6, 2022 Deposition of Patrick McDermott ("2022 McDermott Dep."), attached hereto as Exhibit D, 70:12-19. The MAXCASH business advertises and reaches out to potential customers who are

seeking loans, and then connects those customers with vetted lenders. Sept. McDermott Dec. ¶ 5.

54.     For the first several years, QuadW was the sole corporate entity behind the MAXCASH business. Sept. McDermott Dec. ¶ 6. Then, after TMG was formed, QuadW and TMG operated the business together, but the public reputation and goodwill of the business have always been embodied in the public-facing name and mark MAXCASH. Sept. McDermott Dec. ¶ 7. MAXCASH has been the consumer-facing business name and mark for all of the business's services. 2022 McDermott Dep., Ex. D hereto, 288:3-17. Whenever a potential customer contacts the MAXCASH business and gives personal information, that information goes into a database, and the customer receives confirmation messages and further information from the entity identifying itself as MAXCASH. 2022 McDermott Dep., Ex. D hereto, 288:3 – 289:8.

55.     Since 2009, the MAXCASH business has placed pay-per-click advertisements involving the MAXCASH mark on platforms like Google, Bing, and Facebook. 2022 McDermott Dep., Ex. D hereto, 66:11 – 67:22. It has placed digital ads on partner websites, and paid for placement of its mark and services on websites where consumers can leave reviews. 2022 McDermott Dep., Ex. D hereto, 62:5 – 63:19.

56.     TMG has promoted its services through its two major websites at www.maxcashtitleloans.com and www.maxcash.com, has sent out advertising email messages and SMS messages, placed promotional videos online, rented billboard space, and attended trade shows. ECF No. 106-3, p. 31-32. Between 2009 and 2020, TMG spent over $831,000 on advertising, though the more recent years represent the highest percentage of that amount. Sept. McDermott Dec. ¶ 8.

57.     TMG generates sales in three basic categories:  it receives a commission for each funded loan for which it sends lead information to certain lenders, it receives a much smaller commission for each customer lead it sends to other lenders, and it receives a per-click commission on various other types of web traffic.  2022 McDermott Dep., Ex. D hereto, 79:22 – 80:3.

58.     TMG's current version of its client database goes back to 2013, and between 2013 and December 1, 2020 over 802,000 entries were created in that database.  Sept. McDermott Dec. ¶¶ 9-10.  In the middle of April 2022, that database had more than 2.26 million entries.  Sept. McDermott Dec. ¶ 10.  As of the week of September 18, 2023, that database has more than 10.8 million entries.  Sept. McDermott Dec. ¶ 10.

59.     The Nationwide Multistate Licensing System ("NMLS") is a national organization and system which allows members to apply for and maintain state licensing for certain financial activities across all U.S. states and territories.  Sept. McDermott Dec. ¶ 11.  TMG is one of the largest NMLS-licensed Loan Brokers in the auto title loan, personal loan and installment loan product lines.  Sept. McDermott Dec. ¶ 12.   TMG is one of the largest lead-generation companies licensed to handle consumer financial data.  Sept. McDermott Dec. ¶ 12.  TMG works with various nationwide lenders, and for several of them, TMG is their largest partner, meaning its leads result in the greatest number of funded loans.  Sept. McDermott Dec. ¶ 13.

60.     In late 2022 TMG discovered a competing website at www.maxcash.us which had copied content from TMG's own www.maxcash.com website, designed its own "Max Cash" logo, and was offering to connect customers with lenders.  Sept. McDermott Dec. ¶ 14;  ECF No. 112-20.  Through public WHOIS information, TMG learned that the competing domain name

was owned by Pham Huy, who had previously been a TMG affiliate and sent leads to TMG for commissions. Sept. McDermott Dec. ¶ 14. TMG was forced to use the ICANN domain name dispute process to stop the infringing use. Sept. McDermott Dec. ¶ 14 and Ex. A thereto.

61.     In early 2023 TMG discovered that a third party calling itself "MaxCashUSA" had placed a competing website at www.maxcashusa.com offering to connect customers with lenders. Sept. McDermott Dec. ¶ 15; ECF No. 112-21. TMG is still in the process of halting the infringement of its trademark rights by MaxCashUSA. Sept. McDermott Dec. ¶ 17.

62.     In early 2023 TMG discovered that a third party calling itself "Max Cash Advance" had placed a competing website at www.maxploans.com offering to connect customers with lenders. Sept. McDermott Dec. ¶ 16; ECF No. 112-23. TMG is still in the process of halting the infringement of its trademark rights by Max Cash Advance. Sept. McDermott Dec. ¶ 17.

63.     TMG publicly uses the variants of its MAX CASH mark with and without the space between "max" and "cash" interchangeably, sometimes within the same document. Exhibit 10 to October 26, 2022 Transcript of Deposition of Fred Winchar, attached hereto as Exhibit E; TMG00489-93, attached hereto as Exhibit A; Sept. McDermott Dec. ¶ 18 and Exhibit B thereto.

64.     Defendant and its partner financial institutions have referred to the relevant credit card products with the names "Max Cash Preferred" and "Max Cash Secured." Owens Dep., Ex. B hereto, 31:24 – 33:6 and Dep. Ex. 52.

65.     Defendant has created and shared with its partners for further distribution digital advertisements describing the "Max Cash Preferred" credit card product. October 11, 2022

Deposition of James Poluch ("Poluch Dep."), attached hereto as Exhibit F, 67:17 – 70:23 and Dep. Ex. 36.

66.     With respect to credit cards, "preferred" is a nondistinctive and commonly used descriptive term which refers to a higher-tier card offered to consumers with strong credit scores. TMG00473-77, attached hereto as Exhibit G; TMG00478-79, attached hereto as Exhibit H; TMG00480-82, attached hereto as Exhibit I; TMG00483-85, attached hereto as Exhibit J; TMG00486-88, attached hereto as Exhibit K.

67.     With respect to credit cards, "secured" is a nondistinctive and generic term for a type of card that is backed by some type of collateral, often a cash deposit from the cardholder. TMG01065-69, attached hereto as Exhibit L; TMG01070-76, attached hereto as Exhibit M.

68.     TMG's services offered under the MAXCASH mark center around the arrangement and provision of lending services, including "financing and loan services; loan origination services; providing temporary loans; Arranging and provision of credit, loans, insurance," and "financial services, namely, vehicle title loans."  TMG00285, attached hereto as Exhibit N.

69.     Defendant's partner financial institutions offer lending products in addition to the credit card accounts Defendant provides.  Owens Dep., Ex. B hereto, 27:3 – 28:11.

70.     Many financial institutions publicly advertise that they offer both credit cards and auto title loans.  TMG01213-16, attached hereto as Exhibit O;  TMG01217-23, attached hereto as Exhibit P;  TMG01224-28, attached hereto as Exhibit Q;  TMG01229-32, attached hereto as Exhibit R;  TMG01233-35, attached hereto as Exhibit S.

71.     Various federal trademark registrations include both credit card services and loan services, including auto title loan services.  TMG01236-37, attached hereto as Exhibit T;

TMG01239-40, attached hereto as Exhibit U;  TMG01242-43, attached hereto as Exhibit V;

TMG01245, attached hereto as Exhibit W;  TMG01249, attached hereto as Exhibit X;

TMG01251, attached hereto as Exhibit Y;  TMG01253, attached hereto as Exhibit Z.

72.     Both TMG and Defendant sell their services to essentially the entire United

States.  TMG offers loans under its cost-per-funded model in around 34 to 38 states, but offers

other products, such as a personal loan or a secured credit card based on the value of a

borrower's automobile title, in all 50 states.  2022 McDermott Dep., Ex. D hereto, 223:14 -

226:10.  Defendant markets its products to customers in all 50 states.  Poluch Dep., Exhibit F

hereto, 53:17 – 54:11.

73.     Credit cards can be used by consumers to borrow money.  Owens Dep., Ex. B

hereto, 19:9 – 21:20, 102:12-24.

74.     TMG promotes its services through its own websites at

www.maxcashtitleloans.com and www.maxcash.com.  ECF No. 106-3 p. 31.  Defendant's

affiliate institutions promote Defendant's credit cards such as the Max Cash Preferred and Max

Cash Secured cards on affiliate institution websites using content that is created and managed by

Defendant.  Owens Dep., Ex. B hereto, 31:24 – 34:4 and Dep. Ex. 52.

75.     Internet searches for the phrase "max cash" will return organic results including

both TMG's web pages and the web pages of many of Defendant's affiliate institutions, such as

Associated Bank, promoting Max Cash Preferred and Max Cash Secured credit cards.  Transcript

of June 6, 2023 deposition of Patrick McDermott ("McDermott 2023 Dep."), attached hereto as

Exhibit AA, 33:21 – 34:13.

76.     On January 10, 2022, a potential TMG customer named Cindy Lollar contacted

TMG through one of its MAXCASH branded websites.  When a MAXCASH sales

representative called her, she stated that she was looking for a credit card.  ECF No. 106-3 pp. 32-33.

77.     On January 29, 2022, a potential TMG customer named Jimmy Woods called TMG seeking assistance in filling out an online application for a credit card the customer assumed was offered by TMG.  ECF No. 106-3 pp. 32-33.

78.     On February 4, 2022, a potential TMG customer named Reddy Ramachandra called TMG seeking to obtain a Max Cash credit card he had seen on a third party loan advance website.  ECF No. 106-3 pp. 32-33.

79.     The transcript of the February 4, 2022 call from the potential TMG customer indicates that the Customer Sales Representative asked if the third party website gave the potential customer an option to "do the Max Cash card."  The potential customer answered affirmatively, and after being told that MaxCash (TMG) doesn't "do that," the potential customer referred to MaxCash not "do[ing] the AmEx card."  ECF No. 106-3 p. 254.

80.     During the time Defendant was in the process of selecting that name and mark MAX CASH PREFERRED, the marketing firm it was working with sent a "Preliminary Usage Vetting Process/Worksheet" document to several of Defendant's executives who were involved in the naming process.  Transcript of October 4, 2022 Deposition of Christopher Roncari ("Roncari Dep."), attached hereto as Exhibit BB,  75:10-24 and Dep. Ex. 20 and 22.  The Preliminary Usage Vetting Process/Worksheet stated that there was a live trademark for "Max Cash" within the financial and loan category, and gave the specific federal application and registration numbers for that trademark.  Roncari Dep. Ex. 22 pp. 1-2.

81.     Defendant's proffered reverse confusion survey contained no mechanism to determine of its respondents had been exposed to either of Defendant's MAX CASH credit

cards. Therefore, it is possible that none of those respondents had any knowledge of those cards.

Transcript of June 21, 2023 Deposition of Hal Poret, attached as Exhibit CC hereto, 107:5-19.

Respectfully submitted,

TRADITION MEDIA GROUP, LLC

Date:   September 21, 2023          By:    /s/  Mark R. Bagley
                                        Mark R. Bagley
                                        Brett M. Tolpin
                                        TOLPIN & PARTNERS, PC
                                        30 North LaSalle Street, Suite 1510
                                        Chicago, Illinois 60602
                                        (312) 698-8971

                                        *Attorneys for Plaintiff Tradition
                                        Media Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO U.S. BANK'S STATEMENT OF FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS REQUIRING DENIAL OF U.S. BANK'S MOTION FOR SUMMARY JUDGMENT** was served via the Northern District of Illinois electronic filing system to:

> Robert D. Leighton
> Harleen Kaur
> GOLDBERG KOHN LTD.
> 55 East Monroe Street, Suite 3300
> Chicago, Illinois 60603

on this 21st day of September, 2023.


                                    /s/  Mark R. Bagley                              _
                                    Mark R. Bagley