UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADITION MEDIA GROUP, LLC, | ) | |
| | ) | Case No. 1:21-cv-4471 |
| Plaintiff, | ) | |
| v. | ) | Judge John F. Kness |
| | ) | |
| US BANK NATIONAL ASSOCIATION, | ) | Magistrate Judge Maria Valdez |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPPOSING DEFENDANT'S *DAUBERT* MOTION
TO EXCLUDE TESTIMONY OF MARK PEDOTE ON
SECONDARY MEANING AND REVERSE CONFUSION**

There is no reason for this Court to exclude any of the proposed testimony of Plaintiff Tradition Media Group, LLC's ("TMG") expert Mark Pedote with respect to Defendant U.S. Bank, N.A.'s ("Defendant") secondary meaning and reverse confusion surveys. Defendant is attempting to exclude three specific opinions of Mr. Pedote regarding the secondary meaning survey, and four of his specific opinions regarding the reverse confusion survey. All of these attempts fail, both because Defendant attacks the substance of Mr. Pedote's opinions rather than his methodology or the relevance of the opinions, and because Defendant is wrong on the substance of its attacks. This Court should deny Defendant's motion in its entirety.

**I.      The legal standard for admitting expert witness testimony.**

The Seventh Circuit instructs district courts to evaluate three things when performing the gatekeeping role regarding expert testimony set out by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Those three things are: "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Kirk v. Clark Equipment Co.*, 991 F.3d 865, 872 (7th Cir

1

2021). At the same time, "[t]he jury must still be allowed to play its essential role as the arbiter of the weight and credibility of expert testimony." *Stollings v. Ryobi Technologies, Inc.*, 725 F.3d 753, 765 (7th Cir. 2013). As a result, when a court evaluates whether expert testimony is admissible, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

II.    **Mr. Pedote is qualified to give his offered opinions.**

Defendant's halfhearted challenge to Mr. Pedote's qualifications, namely that "it is far from clear that Mr. Pedote is even qualified to opine on Mr. Poret's surveys or issues of statistics in those surveys" (Defendant's Daubert Motion to Exclude Testimony of Mark Pedote On Secondary Meaning and Reverse Confusion ("Defendant Brief"), ECF No. 102, p. 4), is no reason to exclude Mr. Pedote's opinions. An expert witness can be qualified "by knowledge, skill, experience, training, or education." Fed. R. Ev. 702. This means that "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Walker v. Soo Line Railroad Co.*, 208 F.3d 581, 591 (7th Cir. 2000). Here, Mr. Pedote has undergraduate degrees in marketing and economics (Transcript of June 27, 2023 Deposition of Mark Pedote ("Pedote Dep."), attached as Exhibit A to the Declaration of Mark R. Bagley filed herewith, at 11:14-18), but beyond that for more than 38 years he has been advising clients about consumer survey research and the marketing insights which can be gained from it. *Id*. at 12:10 – 13:2. *See also* ECF 102-1 pp. 107-08. Defendant makes the very narrow criticism that Mr. Pedote has no experience "designing and conducting secondary meaning or reverse confusion surveys" (Defendant Brief p. 3), but "[t]he fact that an expert may not be a specialist in the field that concerns her opinion typically goes to the weight to be placed on that opinion, not its admissibility." *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016). In reality, Mr. Poret's secondary meaning and reverse confusion surveys are simply two specific types of the consumer surveys which Mr. Pedote

2

has spent years designing, overseeing, and interpreting. As a result, Mr. Pedote is more than qualified to analyze, detect and explain potential flaws in the consumer surveys Mr. Poret created for this case.

### III. Mr. Pedote's opinions about Defendant's secondary meaning survey are admissible.

Defendant attempts to exclude three specific critiques Mr. Pedote makes of Mr. Poret's secondary meaning survey. *See* Defendant Brief p. 5. However, Defendant's attacks are not directed at the relevant topics of Mr. Pedote's qualifications, his methodology, or the relevance of his critiques. *See Kirk*, 991 F.3d at 872. Indeed, an expert critiquing the opinions of an opposing expert "needs only her expertise and the 'method' identified at the beginning of her report – namely, reviewing the documents in this case, along with [the opposing expert's] report, and arriving at an opinion as to [the opposing expert's] analysis …." *Henkel v. Wagner*, 2016 WL 1271062 at *12 (S.D.N.Y, March 29, 2016). *See also Capri Sun GmbH v. American Beverage Corp.*, 595 F.Supp.3d 83, 138 (S.D.N.Y. 2022) ("Rebuttal experts thus 'have a less demanding task because they have no burden to produce models or methods of their own; they need only attack those of plaintiff['s] expert[].'") Here, Defendant essentially attacks the correctness and accuracy of Mr. Pedote's criticisms, which in this context are the same as his conclusions. These are improper bases for a *Daubert* motion to exclude, as "[a] district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed." *Manpower, Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). Defendant's attempts to exclude Mr. Pedote's three specific opinions fail on this ground alone, and Defendant also fails to show that Mr. Pedote is mistaken or incorrect on the substance of the critiques he offers.

### A. Opinion regarding survey questions about association with more than one company

There are no grounds to exclude Mr. Pedote's criticism of Mr. Poret's ordering and interpretation of questions in the secondary meaning survey related to respondents who stated they associated the term MAXCASH with more than one company. First, Defendant is essentially attacking the substance of Mr. Pedote's opinion that Mr. Poret's survey has a particular flaw. Defendant is therefore asking this Court to usurp the role of the jury by ruling that there is no way that this particular substantive criticism of Mr. Poret's survey and conclusions could be correct. *See Manpower*, 732 F.3d at 806. This is not a proper basis for a *Daubert* motion to exclude.

Even setting aside the fundamental impropriety of what Defendant urges this Court to do, Defendant is wrong on the substance of its assertion that certain respondent answers about associating a mark with more than one company can never indicate secondary meaning. Defendant's assertion ignores the reality that the concept of a mark being "associated with a single source" is essentially a term of art in trademark law, connoting that such source is the manufacturer or provider of the good or service. Non-lawyer survey respondents could very well interpret the phrase "associated with" differently. As the TTAB put it, "[t]he interviewees in the survey were presumably not well versed in the legal significance trademark lawyers would attach to the phrase 'associate with one particular source.'" *British Seagull Ltd. v. Brunswick Corp.*, 28 U.S.P.Q.2d 1197, 1993 WL 409141, *7 (TTAB 1993). This is particularly true in the context of the present facts, where TMG's MAXCASH business is a broker of various types of loans, connecting potential borrowers with other companies which loan the actual money. *See* ECF No. 102-1 p. 96 (discussing "the unique nature of TMG's business model of brokering loan services"). It would be perfectly logical for a respondent to claim to "associate" the term MAXCASH with both TMG's company and the lender that TMG helped the respondent to find, even if the respondent understood

4

that MAXCASH was the source identifier of the company that did the brokering. There is no reason to exclude Mr. Pedote's critique that Mr. Poret failed to consider this possibility.

Defendant is also substantively incorrect in its related argument that this Court should exclude Mr. Pedote's criticism of Mr. Poret's assumption that a respondent who associated the MAXCASH mark with a single but different financial entity such as Chase can never demonstrate secondary meaning. Defendant claims that Mr. Pedote's criticism is "clearly contrary to the law" (Defendant Brief p. 6), but never cites any actual law to support this claim. In fact, Mr. Pedote's position is consistent with the law, namely the anonymous source rule that secondary meaning does not require the public to know the specific name of the entity behind a mark. *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 856 (7th Cir. 1982). If the public can understand that a mark signifies a specific company's reputation without knowing the name of the specific company, then a person who mistakenly identifies the underlying company or even guesses at it incorrectly does not disprove the existence of secondary meaning. Mr. Poret's apparent position, that a respondent must correctly identify TMG as the underlying company associated with the MAXCASH mark in order to demonstrate secondary meaning, is a direct contradiction to the anonymous source rule. It would be improper to prevent Mr. Pedote from pointing this out.

### B. Opinion regarding including past purchasers in survey universe

Defendant's second major attempt to exclude one of Mr. Pedote's substantive criticisms, concerning past purchasers in Mr. Poret's survey universe, suffers from similar flaws. First, Defendant is again improperly attempting to get this Court to usurp the factfinder role and determine that a specific opinion should be excluded because Defendant asserts it is substantively incorrect. As described above, a motion to exclude should not be decided on this basis. More importantly, Defendant is asking this Court to exclude a purported opinion of Mr. Pedote that he

5

never actually asserts. Specifically, Defendant requests that the Court "exclude Mr. Pedote's opinion that a survey universe *must* exclude past purchasers." Defendant Brief p. 8 (emphasis added). However, an examination of Section 1.a of Mr. Pedote's report (ECF No. 102-1 p. 93), which Defendant identifies as the source of this supposed opinion (Defendant Brief p. 7), shows that Mr. Pedote never says anything so extreme. Instead, Mr. Pedote is criticizing the wide temporal range of Mr. Poret's sampled universe, which includes respondents who made actual purchases of relevant services up to two years in the past and those who were planning to do so up to twelve months in the future. *Id*. As a result, Mr. Pedote's reference to "an appropriate sampling for this market" (*id*.) is a reference to what an *ideal* respondent universe would be, rather than what it must be. Mr. Pedote even states, in a sentence conveniently ignored by Defendant, that "[t]he consumer survey researcher should always seek to sample households that are actively shopping the relevant product category in the most recent time frame possible." *Id*. There is no reason for this Court to "exclude" an opinion which Mr. Pedote does not assert, even if it were in the business of excluding substantive opinions which it believed were incorrect.

### C. Opinion regarding statistical confidence level

The third opinion which Defendant attempts to exclude from Mr. Pedote's critique of Mr. Poret's secondary meaning survey concerns the statistical confidence level that can be attributed to a certain portion of the survey which had 122 responses. *See* Defendant Brief p. 8. That opinion, namely that this portion of the survey has a confidence level of approximately 75%, is not "based on an assumption that Mr. Pedote has admitted is false," as Defendant claims. Defendant Brief p. 9. Instead, what Defendant characterizes as an "assumption" is actually a separate opinion (or part of one) about the proper inputs that should go into the standard equation for deriving a survey confidence level.

6

As Defendant's Brief describes on page 8, in calculating this particular confidence level Mr. Poret and Mr. Pedote used very different numbers for the equation variable called "population proportion." This is a term of art which roughly means the percentage of responses which show a certain thing, such as, here, demonstrating the existence of secondary meaning. Mr. Poret used a population proportion of 3.3%, while Mr. Pedote used 50%. *Id*. at p. 8. This difference was not due to Mr. Pedote making a "false factual assumption" (*id*.), but rather because Mr. Pedote and Mr. Poret were *measuring entirely different things*. Mr. Pedote was giving the confidence level for any binary-result consumer survey of 122 individuals, before the survey taker knows how the results will turn out. This approach uses a population proportion of 50% as a way of intentionally not pre-judging the survey results by making either of two possible results equally likely. Mr. Poret, on the other hand, was giving a confidence level for this specific survey portion based on the results actually gathered, namely the 3.3% of responses which Mr. Poret interpreted as supporting or showing secondary meaning. As a result, Defendant is actually asking this Court to reject Mr. Pedote's opinion that the more general, pre-result approach is a valid way to criticize the size of this portion of the survey. Such a rejection of Mr. Pedote's opinion about the proper way to think about statistical confidence level would be problematic, as Mr. Poret's alternative approach of using the 3.3% claimed result as the population proportion input assumes away all of the other survey flaws Mr. Pedote identifies which allow Mr. Poret to claim that the result is that low. Like with the other issues discussed above, the evaluation of the validity of Mr. Pedote's opinion about how to approach statistical confidence levels is one that must be left to the factfinder, instead of decided on a *Daubert* motion to exclude.

**IV. Mr. Pedote's opinions about Defendant's reverse confusion survey are admissible.**

Defendant attempts to exclude four specific critiques Mr. Pedote makes of Mr. Poret's reverse confusion survey. *See* Defendant Brief pp. 9-10. Again, Defendant's attacks are not

7

directed at the relevant topics of Mr. Pedote's qualifications, his methodology, or the relevance of his critiques. *See Kirk*, 991 F.3d at 872. Instead, Defendant attacks the correctness and accuracy of Mr. Pedote's criticisms. These are improper bases for a *Daubert* motion to exclude. *Manpower*, 732 F.3d at 806. Defendant's attempts to exclude Mr. Pedote's four specific opinions fail on this ground alone, and Defendant also fails to show that Mr. Pedote is mistaken or incorrect on the substance of the critiques he offers.

### A. Opinion regarding Eveready vs. Squirt survey formats

There is no reason for this Court to exclude Mr. Pedote's opinion that Mr. Poret's choice of an Eveready format over a Squirt format for the reverse confusion survey was not the best choice under the particular facts of this case. Again here, Defendant attacks the substance of Mr. Pedote's opinion rather than his methodology (which, as a rebuttal expert, he need not even have) or the relevance of that opinion. As stated above, it is the factfinder's job to evaluate the substance of an expert's opinion, and excluding that opinion under the premise that it is simply wrong, as Defendant requests, would be an abuse of discretion. *Manpower*, 732 F.3d at 806.

Even if it were permissible to exclude Mr. Pedote's opinion for being substantively incorrect, that is far from the case here. As Defendant admits, Eveready format surveys and Squirt format surveys have both been admitted by various courts in the trademark infringement context. Defendant Brief p. 10. Because they utilize different conceptual approaches, it is only natural that each one will have both advantages and disadvantages for any given factual situation. Defendant's isolated citations to a handful of sources which criticize Squirt surveys and laud Eveready surveys (*id*. at pp. 10-11) do not add up to an ironclad conclusion that the Squirt format is automatically inferior in the present case. Furthermore, a number of Defendant's citations are themselves misleading, such as the description that the court in *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 487-88 (5th Cir. 2004) criticized a Squirt survey for prodding "survey participants

8

to search for any connection, no matter how attenuated, between the two companies." In reality, that criticism was of the specific language in that particular survey and did not implicate Squirt format surveys in general. In addition, Defendant's description of the Eveready format as simply the "gold standard" (Defendant Brief p. 11) is taken out of context, as the actual quote referenced in the McCarthy treatise is that Eveready should be considered the gold standard "[i]n cases involving strong marks." J.B. Swann, *Likelihood of Confusion Studies and the Straightened Scope of Squirt*, 98 Trademark Rptr. 739, 746 (2008).

Mr. Pedote's opinion that an Eveready format survey was not appropriate here is supported in his report itself, with the reasoning that an Eveready survey will produce inaccurate results where the mark not shown to survey respondents is not widely recognized. ECF No. 102-1 p. 99, Section 1.a. Defendant attempts to muddy the waters on this point by citing to an answer in Mr. Pedote's deposition where he was correcting his report statement about what Mr. Poret's *separate secondary meaning survey* asserts. *Compare* the indented deposition quotation at Defendant Brief p. 12 with the second and third sentences of ECF No. 102-1 p. 99, Section 1.a].[1] In any case, Mr. Pedote's basic criticism still stands: An Eveready format survey will produce inaccurate or even meaningless results where the mark not shown to respondents is not well known. Defendant then gets it precisely backwards when it argues, without citing any authority, that Mr. Pedote's opinion should be excluded because Mr. Pedote did not gather evidence to prove that Defendant's use of the "Max Cash" mark was not widely recognized. Defendant Brief p. 12. This is backwards because neither Mr. Pedote nor TMG has the burden of gathering that evidence. As the proponent of the validity and persuasiveness of the Poret reverse confusion survey, Defendant has that

---

[1] In other words, Mr. Pedote was not "admitting" that TMG's use of "Max Cash" is not widely recognized. *See* Defendant Brief p. 12 n. 6. Instead, he was clarifying that Mr. Poret's secondary meaning survey attempts to show that TMG's use of "Max Cash" is not widely recognized.

burden. There is no reason to exclude Mr. Pedote's observation that it is a serious flaw in the persuasiveness of that survey that there is no evidence in the record that Defendant's use of "Max Cash" is well known.

Defendant's final digression into an attempt to create a catch-22 about what positions TMG supposedly "must" take with respect to reverse confusion surveys (Defendant Brief p. 13) does not prove that Mr. Pedote's criticisms must be excluded. Defendant's argument here is not even substantively correct, as it turns on the false proposition that "reverse confusion *requires* that a defendant has used a trademark to such an extent" that it has swamped or saturated a particular market. *Id*. As TMG has previously explained to this Court (*see* ECF No. 49 at pp. 2-3, 6), the element of a junior mark user saturating a market is a part of those reverse confusion cases where there is no plausible simultaneous forward confusion. In those cases where forward and reverse confusion occur simultaneously, there is no such requirement of saturating a market. TMG is not required to argue that Defendant has swamped any market with its use of "Max Cash," and there is certainly no reason to exclude Mr. Pedote's observation that Defendant has failed to prove that same use was wide enough to demonstrate that Mr. Poret's Eveready survey yielded any meaningful results.

### B. Opinion regarding survey flow of questions

Defendant's attack on Mr. Pedote's criticism of the flow (including the order) of the questions in the reverse confusion survey (Defendant Brief p. 14) suffers from the same flaw as Defendant's other arguments: it attacks the substance of Mr. Pedote's opinion rather than methodology or relevance. Moreover, at the same time it ignores the substantive thrust of most of Mr. Pedote's criticism. Instead, Defendant's entire attack centers on an absurdly unlikely misreading of some of the words in a possible alternative order of questions Mr. Pedote proposes. Defendant's argument seems to assume, without any logic or explanation, that asking survey

respondents "What company do you believe created this website?" will cause them to universally jump to the conclusions that (1) only "web design companies" create websites, and (2) the question is asking about those web design companies instead of the company whose goods or services the substance of the website actually refers to. There is absolutely no reason to assume survey respondents would jump to those conclusions rather than taking the much more commonsense approach of reading "company that created this website" to be a shorthand for "the company whose goods or services are described here." Defendant offers no challenges to any of the other substantive criticisms Mr. Pedote raises in Section 1.c of the reverse confusion portion of his report. Because Defendant challenges only one very minor substantive portion of Mr. Pedote's opinions about question flow, and that one challenge could be aired in trial cross-examination if it made any sense at all, there are no grounds to exclude any of Mr. Pedote's opinions on this topic.

### C. Opinion regarding survey universe including past purchasers

Mr. Pedote's criticism of the reverse confusion survey universe for including past purchasers is part of a larger criticism that this universe includes purchasers from over too wide a time period – from two years in the past through twelve months in the future. ECF No. 102-1 p. 101. Although Defendant labels this opinion as "irrelevant" (Defendant Brief p. 15), the essence of its argument why this opinion must be excluded is that it is substantively wrong. Defendant's reasons for exclusion (Defendant Brief p. 14) include that Mr. Poret has his own opinion why past purchasers should be included, that other courts have refused to exclude surveys which included past purchasers, and that Mr. Poret's survey included enough of both past and future purchasers – all reasons which imply that Mr. Pedote's criticism is wrong, not irrelevant. A motion to exclude an expert opinion cannot turn on the supposed substantive wrongness of that opinion.

11

**D. Opinion regarding interpretation of responses naming specific entities**

There is no reason to exclude Mr. Pedote's opinion that Mr. Poret incorrectly interpreted the meaning of certain responses naming entities the respondent thought were affiliated with the services on TMG's websites. Like with Defendant's other arguments, its argument here boils down to saying that Mr. Pedote's criticism is substantively wrong, or that conversely Mr. Poret's interpretation on this issue is flawless and beyond such criticism. If that were not enough reason to deny the requested exclusion, Defendant also misrepresents the nature of Mr. Pedote's criticism. Mr. Pedote never argues that *all* of the disputed "answers tend to indicate that consumers are being confused …." Defendant Brief p. 15. Instead, Mr. Pedote criticizes Mr. Poret's conclusion that "none of these respondents gave any answer indicating that the were thinking of Defendant or its products." ECF No. 102-1 p. 104. There is a huge middle ground between *all* responses indicating something and *none* of those responses indicating it, and Mr. Pedote's point is in that middle. For example, Defendant cherry-picks certain responses such as "title max," "google," and "liberty mutual" (Defendant Brief p. 15), but Defendant fails to mention that other of those responses include "leners" (which can be interpreted as "lenders"), "Banks," "lending companies," and "Probably banks." ECF No. 102-1 p. 87. These latter responses in particular could very well indicate references to Defendant's disputed credit cards, which are distributed to the public through Defendant's many partner banks and credit unions across the country. *See* Answer to Amended Complaint, ECF No. 40, ¶ 12. There is no reason to exclude Mr. Pedote's opinion that Mr. Poret's analysis misses some of those possibilities. Defendant may disagree substantively, but that is a matter for cross-examination rather than outright exclusion of Mr. Pedote's opinion.

### V. The remainder of Mr. Pedote's opinions are admissible.

After addressing the seven specific opinions discussed above, Defendant arguably makes an attempt to exclude the entire remainder of the opinions in Mr. Pedote's January 2023 Report by stating Mr. Pedote's remaining "disclosures consist of a variety of other comments that are either baseless or immaterial, none of which would actually help the finder of fact evaluate Mr. Poret's evidence." Defendant Brief p. 15. However, by making only this vague blanket attack on those remaining opinions, Defendant has waived any arguments it might have with respect to their admissibility. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010).

### Conclusion

For the reasons discussed above, there are no grounds to exclude any of Mr. Pedote's opinions regarding Defendant's secondary meaning or reverse confusion surveys. This Court should deny Defendant's motion in its entirety.

Respectfully submitted,

TRADITION MEDIA GROUP, LLC

Date: September 21, 2023

By: /s/ Mark R. Bagley
Mark R. Bagley
Brett M. Tolpin
TOLPIN & PARTNERS, PC
30 North LaSalle Street, Suite 1510
Chicago, Illinois 60602
(312) 698-8971

*Attorneys for Plaintiff Tradition Media Group, LLC*

## **CERTIFICATE OF SERVICE**

   I hereby certify that a true and correct copy of the foregoing **MEMORANDUM OPPOSING DEFENDANT'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF MARK PEDOTE ON SECONDARY MEANING AND REVERSE CONFUSION** was served via the Northern District of Illinois electronic filing system to:

    Robert D. Leighton
    Harleen Kaur
    GOLDBERG KOHN LTD.
    55 East Monroe Street, Suite 3300
    Chicago, Illinois 60603

on this 21st day of September, 2023.

              /s/ Mark R. Bagley
              Mark R. Bagley