IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRADITION MEDIA GROUP, LLC, | ) |
| Plaintiff, | ) Case No. 1:21-cv-4471 |
| vs. | ) Judge John F. Kness |
| US BANK NATIONAL ASSOCIATION, | ) Magistrate Judge Maria Valdez |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND DEFENDANT'S ADDITIONAL FACTS IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(b)(3), U.S. Bank National Association ("U.S. Bank") hereby provides the following responses to Plaintiff Tradition Media Group, LLC's ("TMG") Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment and states as follows:

1. TMG is the owner of U.S. Trademark Registration No. 6,014,321 for the word mark MAXCASH. This registration matured from Application Serial No. 88/004,966. TMG00285, attached as Exhibit A to the August 14, 2023 Declaration of Mark R. Bagley ("Bagley Dec.") filed herewith.

**RESPONSE:** Not disputed.

2. The U.S. Patent and Trademark Office ("USPTO") issued a single Office Action during the prosecution of Application Serial No. 88/004,966. TMG00266-68, attached to Bagley Dec. as Exhibit B. That Office Action listed five issues to be addressed if a registration were to be issued, and none of those issues included a demand for evidence of secondary meaning. TMG00147-52, attached to Bagley Dec. as Exhibit C.

**RESPONSE:** Disputed in part. U.S. Bank does not dispute that the USPTO issued an Office Action on October 11, 2018, during the prosecution of Application Serial No. 88/004,966, that listed five issues, none of which included a demand for evidence of secondary meaning. However, U.S. Bank disputes this statement in part because it is misleading to characterize the prosecution of this application as only involving a "a single Office Action." Subsequent to the October 11, 2018 office action, there was significant and substantive correspondence between TMG and the Examiner in which the Examiner made additional requests and statements, including requests for amendment. Thus, U.S. Bank disputes this statement to the extent it is inconsistent with the entire file history, which is a written record that speaks for itself. In addition, U.S. Bank disputes this statement to the extent it suggests the USPTO indicated TMG would be entitled to a registration if it merely addressed "five issues." The USPTO identified certain issues that needed to be addressed but did not inform TMG these were the only issues. TMG and the Examiner subsequently had substantive correspondence which are part of the file history and speak for themselves. (Ex. 1, Registration Application, TMG00139-287 at TMG00198-203 and TMG00270-75.)

    3.    TMG is the owner of U.S. Trademark Registration No. 6,014,322 for the mark MAXCASH and Design. This registration matured from Application Serial No. 88/004,991. TMG00426, attached to Bagley Dec. as Exhibit D.

**RESPONSE:** Not disputed.

    4.    The USPTO issued a single Office Action during the prosecution of Application Serial No. 88/004,991. TMG00421-23, attached to Bagley Dec. as Exhibit E. That Office Action listed five issues to be addressed if a registration were to be issued, and none of those issues included a demand for evidence of secondary meaning. TMG00298-303, attached to Bagley Dec. as Exhibit F.

**RESPONSE:** Disputed in part. U.S. Bank does not dispute that the USPTO issued an Office Action on October 11, 2018, during the prosecution of Application Serial No. 88/004,966, that listed five issues, none of which included a demand for evidence of secondary meaning. However, U.S. Bank disputes this statement in part because it is misleading to characterize the prosecution of this application as only involving a "a single Office Action." Subsequent to the October 11, 2018 office action, there was significant and substantive correspondence between TMG and the Examiner in which the Examiner made additional requests and statements, including requests for amendment. Thus, U.S. Bank disputes this statement to the extent it is inconsistent with the entire file history, which is a written record that speaks for itself. In addition, U.S. Bank disputes this statement to the extent it suggests the USPTO indicated TMG would be entitled to a registration if it merely addressed "five issues." The USPTO identified certain issues that needed to be addressed, but did not inform TMG these were the only issues. TMG and the Examiner subsequently had substantive correspondence which are part of the file history and speak for themselves. (Ex. 2, Registration Application, TMG00288-428 at TMG00349-356.)

> 5. U.S. Trademark Registration No. 6,014,321 lists the following services:
>
> Installment loans; loan services, namely, cash advance services for businesses and merchants; student loan services; mortgage banking services, namely, origination, acquisition, servicing, securitization and brokerage of mortgage loans; loan services, namely, mortgage refinancing; financial services, namely, providing mortgage loans; loan services, namely, commercial lending; loan services, namely, consumer lending; financial services, namely, vehicle title loans; providing personal loans and lines of credit; financial loan consultation; loan services, namely, lending consulting services; financing and loan services; loan origination services; providing temporary loans; Arranging and provision of credit, loans, insurance; financial services, namely, credit repair and restoration; financial consultation; insurance consultation; insurance agency and brokerage;

>Providing insurance premium rate quotes via on-line, telephone and mail means; insurance information
>
>TMG00285, attached to Bagley Dec. as Exhibit A.

**RESPONSE:** Not disputed.

>6. U.S. Trademark Registration No. 6,014,322 lists the following services:
>
>Installment loans; loan services, namely, cash advance services for businesses and merchants; student loan services; mortgage banking services, namely, origination, acquisition, servicing, securitization and brokerage of mortgage loans; loan services, namely, mortgage refinancing; financial services, namely, providing mortgage loans; loan services, namely, commercial lending; loan services, namely, consumer lending; financial services, namely, vehicle title loans; providing personal loans and lines of credit; financial loan consultation; loan services, namely, lending consulting services; financing and loan services; loan origination services; providing temporary loans; Arranging and provision of credit, loans, insurance; financial services, namely, credit repair and restoration; financial consultation; insurance consultation; insurance agency and brokerage; Providing insurance premium rate quotes via on-line, telephone and mail means; insurance information
>
>TMG00426, attached to Bagley Dec. as Exhibit D.

**RESPONSE:** Not disputed.

>7. Lending institutions do not distribute loaned money as cash, as opposed to through a check or electronic transfer to an account. August 14, 2023 Declaration of Patrick McDermott ("McDermott Dec."), filed herewith, at ¶ 4.

**RESPONSE:** Disputed. First, the definition of "cash" is "ready money" or "money or its equivalent." (Ex. 4, Excerpts of Merriam Webster Dictionary at USB_00002543; Ex. 23, Declaration of Addison Leavy, ¶¶ 2-3.) Lending institutions do distribute loans as "money or its equivalent." Second, TMG has not presented evidence that supports the assertion that **no** lending institution ever distributes physical cash. TMG cannot possibly have knowledge of the practices

-4-

of every lending institution. Even the evidence TMG cites, Mr. McDermott's declaration, does not say this. Instead, Mr. McDermott says only that he is unaware of "lenders in the fields Tradition Media Group, LLC services that distribute loan proceeds as physical cash." That Mr. McDermott is **unaware** of certain practices is not evidence of what is actually occurring, or with what frequency. In addition, to the extent TMG offers Mr. McDermott's declaration as evidence of what third parties are doing, it constitutes inadmissible hearsay.

> 8. Other than TMG's MAXCASH business, the most prominent companies in online lending to individuals include LendingTree, LoanCenter, LoanMart, TitleMax, AmONE, CashNetUSA, and Speedy Cash. McDermott Dec. at ¶ 5.

**RESPONSE:** Disputed. TMG has not presented evidence of "the most prominent companies in online lending to individuals." The only evidence cited by TMG is Mr. McDermott's declaration, which merely lists the referenced companies as "some of the other prominent companies"; it does not assert they represent "the most" prominent. In addition, results from an online search for "online lending to individuals" listed several online lenders other than the eight listed above. None of the eight listed companies ranked among recommended online lenders, which included SoFi, Lightstream, and Happy Money. (Ex. 5, Internet Search Results for Online Loans (Google Search Results, WalletHub Best Online Loans, Experian Best Online Personal Loans, U.S. News Best Online Loans); Ex. 24, Declaration of Harleen Kaur, ¶¶ 2-5.)

> 9. The main web page for the LendingTree website, www.lendingtree.com, does not contain the phrase "max cash." Exhibit G to Bagley Dec.

**RESPONSE:** Not disputed.

> 10. The main web page for the LoanCenter website, www.loancenter.com, does not contain the phrase "max cash." Exhibit H to Bagley Dec.

**RESPONSE:** Not disputed.

  11. The main web page for the LoanMart website, www.800loanmart.com, does not contain the phrase "max cash." Exhibit I to Bagley Dec.

**RESPONSE:** Not disputed.

  12. The main web page for the TitleMax website, www.titlemax.com, does not contain the phrase "max cash." Exhibit J to Bagley Dec.

**RESPONSE:** Not disputed.

  13. The main web page for the AmONE website, www.amone.com, does not contain the phrase "max cash." Exhibit K to Bagley Dec.

**RESPONSE:** Not disputed.

  14. The main web page for the CashNetUSA website, www.cashnetusa.com, does not contain the phrase "max cash." Exhibit L to Bagley Dec.

**RESPONSE:** Not disputed.

  14. The main web page for the Speedy Cash website, www.speedycash.com, does not contain the phrase "max cash." Exhibit M to Bagley Dec.

**RESPONSE:** Not disputed.

  15. Defendant U.S. Bank National Association ("Defendant") offers personal loans, car loans, and mortgages to individuals. None of Defendant's primary web pages describing these loan services include the phrase "max cash." Exhibits N, O, and P to Bagley Dec.

**RESPONSE:** Not disputed.

  16. In 2019, Commerce Bank of Kansas City, Missouri called its mortgage refinancing services the "Max Cash Refinancing Program" before receiving a cease-and-desist letter from TMG's attorneys. TMG00673-74, attached to Bagley Dec. as Exhibit Q; and TMG00676, attached to Bagley Dec. as Exhibit R.

**RESPONSE:** Disputed in part. U.S. Bank lacks knowledge of what Commerce Bank of Kansas City did or said with respect to its mortgage refinancing services in 2019 and TMG does not provide any evidence (e.g., screenshots or reproduction) of how Commerce Bank of Kansas City allegedly used the phrase "max cash." U.S. Bank does not dispute that TMG purports to have sent a cease and desist letter to Commerce Bank of Kansas City in October 2019. U.S. Bank is without knowledge to admit or deny that the purported response from Commerce Bank of Kansas City is authentic. U.S. Bank is also without knowledge to admit or deny what changes, if any, Commerce Bank of Kansas City made after receiving TMG letter. U.S. Bank disputes this SOF to the extent it suggests Commerce Bank of Kansas City made changes as a result of TMG's letter because TMG has not provided any evidence of causation.

> 17. A small Kingman, Arizona title loan company used to use the trade name and service mark "Max Cash Loan Center." TMG01389-91, attached to Bagley Dec. as Exhibit S.

**RESPONSE:** Disputed in part. U.S. Bank lacks knowledge of the size and geographic scope of Max Cash Loan Center as well as how and over what time period this business used the phrase "max cash" and disputes those facts on that basis. U.S. Bank does not dispute that the Internet Archive shows a website for a business called "Max Cash Loan Center" in Kingman, Arizona as of January 2019. U.S. Bank also does not dispute that, as of September 11, 2023 the domain www.maxcashaz.com does not lead to any website.

> 18. A former business affiliate of TMG registered the domain name <maxcash.us> and put up a competing loan brokerage website identified by a "Max Cash" logo. TMG01331-37, attached to Bagley Dec. as Exhibit T.

**RESPONSE:** Disputed in part. U.S. Bank does not dispute that Exhibit T depicts a "maxcash.us" website that appears to provide services relating to installment loans. U.S. Bank disputes the remainder of this SOF because it is unsupported by TMG's cited evidence.

> 19. A loan brokerage website using the name and mark "MaxCashUSA" was recently posted at www.maxcashusa.com. TMG01386-88, attached to Bagley Dec. as Exhibit U.

**RESPONSE:** Disputed in part. U.S. Bank does not dispute that Exhibit U depicts a loan brokerage website for "MaxCashUSA" from www.maxcashusa.com. However, U.S. Bank disputes that this website was "recently posted." Internet Archive evidence shows that this website has been active as a loan brokerage website since at least September 2017 and has existed in its current form for at least 1.5 years, since March 2022. (Ex. 6, Supplemental Third-Party Usage, MaxCashUSA Screenshots from Wayback Machine; Ex. 25, Declaration of Robert D. Leighton, ¶¶ 2-8.)

> 20. A loan brokerage website called Motive Loan has purchased "max cash" as keyword advertising on Google and placed that same term in bold on the top line of the resulting ad. TMG01368-74, attached to Bagley Dec. as Exhibit V.

**RESPONSE:** Disputed in part. U.S. Bank does not dispute that Exhibit V, TMG's April 21, 2023 letter to a "Motive Loan" in Michigan, purports to include a printout that appears to show a Google search for "max cash" performed on April 20, 2023 and a listing for the website www.motiveloan.com as a "Sponsored" listing. U.S. Bank disputes that this evidence shows what purchase, if any, was made by "Motive Loan", or when that purchase was made.

> 21. A loan brokerage website has recently started using the name and mark MAX CASH ADVANCE. TMG01382-85, attached to Bagley Dec. as Exhibit W.

**RESPONSE:** Disputed in part. U.S. Bank does not dispute that a third-party named MAX CASH ADVANCE uses or has used that name on the internet at the website, www.maxploans.com. U.S. Bank disputes that such use only started "recently" because it is not clear how long this business has been operating. The Privacy Policy from that website lists a date of January 10, 2022, suggesting it has existed for over 1.5 years. (Ex. 6, Supplemental Third-Party Usage (Privacy Policy for Max Cash Advance); Ex. 24, Kaur Decl., ¶¶ 2-5.)

22. The Shorter Oxford English Dictionary, Fifth Edition, contains entries for the individual terms "max" and "cash," but not for combined phrase "max cash." See relevant selected pages from the Shorter Oxford English Dictionary, Fifth Edition, attached to Bagley Dec. as Exhibit X.

**RESPONSE:** Not disputed.

23. The Random House Unabridged Dictionary, Section Edition, contains entries for the individual terms "max" and "cash," but not for combined phrase "max cash." See relevant selected pages from the Random House Unabridged Dictionary, Section Edition, attached to Bagley Dec. as Exhibit Y.

**RESPONSE:** Not disputed.

24. The Oxford English Dictionary online dictionary does not have an entry for the phrase "max cash." Exhibit Z to Bagley Dec.

**RESPONSE:** Not disputed.

25. The Merriam-Webster Dictionary online dictionary does not have an entry for the phrase "max cash." Exhibit AA to Bagley Dec.

**RESPONSE:** Not disputed.

26. The Dictionary.com online dictionary does not have an entry for the phrase "max cash." Exhibit BB to Bagley Dec.

**RESPONSE:** Not disputed.

27. USPTO online trademark records show that U.S. Trademark Registration No. 2,954,362 for the mark MAX CASH is cancelled but was registered for services including "money lending." This registration matured from Application Serial No. 76/551,516. Exhibit CC to Bagley Dec.

**RESPONSE:** Disputed in part. U.S. Bank does not dispute that USPTO online trademark records show that U.S. Trademark Registration No. 2,954,362 for the mark MAX CASH is cancelled but was registered for services including "money lending." U.S. Bank disputes the Application Serial No. stated above, which USPTO records shows to be No. **76/561,516**.

-9-

    28.    The USPTO issued a single Office Action during the prosecution of Application Serial No. 76/551,516. That Office Action did not include a demand for evidence of secondary meaning. Exhibit DD to Bagley Dec.

**RESPONSE:** Disputed in part. U.S. Bank does not dispute that the USPTO issued a single Office Action during the prosecution of the pertinent Application. U.S. Bank disputes the Application Serial No. stated above, which USPTO records shows to be No. **76/561,516**.

    29.    USPTO online trademark records show that U.S. Trademark Registration No. 2,999,710 for the mark MAX CASH PAYDAY LOANS is cancelled but was registered for services including "money lending." This registration matured from Application Serial No. 76/558,891. Exhibit EE to Bagley Dec.

**RESPONSE:** Not disputed.

    30.    The USPTO issued two Office Actions during the prosecution of Application Serial No. 76/558,891. Neither of those Office Actions included a demand for evidence of secondary meaning. Exhibits FF and GG to Bagley Dec.

**RESPONSE:** Not disputed.

    31.    USPTO online trademark records show that U.S. Trademark Registration No. 3,383,719 for the mark MAXXCASH is cancelled but was registered for services including "mortgage banking services." This registration matured from Application Serial No. 76/664,464. Exhibit HH to Bagley Dec.

**RESPONSE:** Not disputed.

    32.    The USPTO issued a single Office Action during the prosecution of Application Serial No. 76/664,464. That Office Action did not include a demand for evidence of secondary meaning. Exhibit II to Bagley Dec.

**RESPONSE:** Not disputed.

    33.    For both of Defendant's Max Cash Preferred card and Max Cash Secured card, Defendant claims a cost identified as a "provision expense." Defendant's August 26, 2022 Second Supplemental Answers to Plaintiff's First Set of

    Interrogatories, attached to Bagley Dec. as Exhibit JJ, at p.6, ln. 24 and at p.8, ln. 24.

**RESPONSE:** Not disputed.

  34. Some of Defendant's credit card customers pay their balances in full each month, while other credit card customers do not pay back their balances within a month and therefore pay interest to Defendant. Transcript of September 21, 2022 deposition of John Lam (the "Lam Dep."), attached to Bagley Dec. as Exhibit KK, at 32:8-20.

**RESPONSE:** Not disputed.

  35. Some portion of the money Defendant loans out to cardholders of the Max Cash Preferred card and Max Cash Secured card is never going to be collected. Transcript of June 29, 2023 deposition of Kevin Arst (the "Arst Dep."), attached to Bagley Dec. as Exhibit LL, at 29:7-13.

**RESPONSE:** Not disputed.

  36. What Defendant calls "provision expense" is the portion of the money Defendant loans out to cardholders of the Max Cash Preferred card and Max Cash Secured card which is never going to be collected. Arst Dep., Bagley Dec. Exhibit LL, at 29:7-23.

**RESPONSE:** Not disputed.

  37. The online version of the Cambridge Dictionary defines credit loss as "a loss that a business or financial organization records, which is caused by customers not paying money they owe." Exhibit MM to Bagley Dec.

**RESPONSE:** Not disputed.

  38. The generally accepted accounting principle known as current expected credit loss (or "CECL") instructs lending institutions to make an estimate of all future losses it expects to incur on the money it loans out, at the time it lends out that money. Lam Dep., Bagley Dec. Exhibit KK, at 145:6-16; 158:8 to 159:13.

**RESPONSE:** Disputed in part. U.S. Bank disputes this SOF to the extent is suggests the CECL is one of the ten main principles of GAAP. U.S. Bank does not dispute that current expected credit

loss ("CECL") is a methodology promulgated by the Financial Accounting Standards Board under ACS 326 and therefore forms part of GAAP, or that CECL requires the recognition of credit losses that are expected over the full life of a loan as of the end of the reporting period measured.

> 39. The Financial Accounting Standards Board announced a shift to the CECL methodology in June of 2016. Financial Accounting Standards Board Accounting Standards Update No. 2016-13, Topic 326 ("FASB Topic 326"), attached to Bagley Dec. as Exhibit NN, at p. 1.

**RESPONSE:** Not disputed.

> 40. The CECL methodology became effective for large public entities at the first fiscal year after December 15, 2019. FASB Topic 326, Bagley Dec. Exhibit NN, at p. 5

**RESPONSE:** Not disputed

> 41. Defendant began using the CECL methodology on January 1, 2020. USB_00000930, attached to Bagley Dec. as Exhibit OO.

**RESPONSE:** Not disputed

> 42. Before adoption of the CECL methodology, GAAP instructed that financial institutions use "an 'incurred loss' methodology for recognizing credit losses that delays recognition until it is probable that a loss has been incurred." FASB Topic 326, Bagley Dec. Exhibit NN, at p. 1.

**RESPONSE:** Not disputed.

> 43. Defendant's damages expert Kevin Arst testified that Defendant's provision expense, which is reflected on line 24 of Defendant's produced profit and loss statement, needs to be expensed in the period in which a loan is made because GAAP requires that timing. Arst Dep., Bagley Dec. Exhibit LL, at 76:14-23; 86:6-13; 97:10 – 98:4.

**RESPONSE:** Disputed in part. U.S. Bank does not dispute that Mr. Arst testified that GAAP requires the recognition of provision expense in the period in which a loan is made. U.S. Bank disputes this SOF to the extent it suggests Mr. Arst testified that provision expense is recognized

in this way *solely* because of GAAP. Instead, Mr. Arst made clear that this is also done to ensure that the treatment of loan losses aligns with the economics of lending (i.e., aligns with the reality that the lender knows some portion of the loan will not be repaid at the time of making the loan), and Mr. Arst testified that such treatment is needed to ensure "an accurate picture of your financial statements or one that's going to be useful to users of the financial statements." (ECF No. 112, Exhibit LL, Arst Deposition at 76:16-23.)

> 44. The general category of "financial statements" includes both balance sheets, which reflect an institution's assets, liabilities, and equity, and income statements, which reflect profits and losses over a specific time period. Arst Dep., Bagley Dec. Exhibit LL, at 52:16 – 53:6.

**RESPONSE:** Not disputed.

> 45. The change to CECL methodology was designed to improve the accuracy and usefulness of balance sheets, because failing to account for the portion of loans expected not to be repaid would systematically over-value those assets on balance sheets. Arst Dep., Bagley Dec. Exhibit LL, at 56:9-57:1.

**RESPONSE:** Disputed in part. U.S. Bank disputes that the CECL methodology was designed solely to improve the accuracy and usefulness of "balance sheets." As explained by Russel Gordon, the Chair of the Financial Accounting Standards Board at the time the CECL methodology was announced, CECL was designed to "align the accounting with the economics of lending." The purpose of CECL is further described in FASB ACS Topic 136 and related documents (including Federal Reserve documents) and is not limited to improving the accuracy of "balance sheets." Such materials expressly recognize the need to record provision expense on income statements. (Ex. 20, Federal Reserve FAQ, https://www.federalreserve.gov/supervisionreg/topics/faq-new-accounting-standards-on-financial-instruments-credit-losses.htm; Ex. 21, Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Supervision and Regulation Report* (Nov. 17, 2022) at 39,

https://www.federalreserve.gov/publications/2022-november-supervision-and-regulation-report-appendix-a.htm; Ex. 16, Expert Report of Kevin Arst at 25; Ex. 17, Deposition of Kevin Arst, 40:3-20; Ex. 25, Leighton Decl., ¶ 9.)

> 46. For both of Defendant's Max Cash Preferred card and Max Cash Secured card, Defendant claims a cost identified as a "shared service expense." Defendant's August 26, 2022 Second Supplemental Answers to Plaintiff's First Set of Interrogatories, attached to Bagley Dec. as Exhibit JJ, at p.6, ln. 26 and at p.8, ln. 26.

**RESPONSE:** Not disputed.

> 47. Defendant's claimed shared service expense is further described as "Net Shared Services and Overhead Expenses (proxy for corporate overhead)." Defendant's August 26, 2022 Second Supplemental Answers to Plaintiff's First Set of Interrogatories, attached to Bagley Dec. as Exhibit JJ, at p. 7 n. 6.

**RESPONSE:** Not disputed.

> 48. Defendant's claimed shared service expense is mostly a fixed cost, with the exception of a portion of it which is related to printing and sending customers' monthly statements. Lam Dep., Bagley Dec. Exhibit KK, at 159:20 – 160:23, 166:19 – 167:3.

**RESPONSE:** Not disputed.

> 49. There is no evidence in the record about what portion of Defendant's claimed shared services expense could be attributed to variable costs such as statements, as opposed to fixed corporate overhead costs. Expert Report of Defendant's expert Kevin Arst, attached to Bagley Dec. as Exhibit PP, at p. 30.

**RESPONSE:** Not disputed.

**DEFENDANT'S ADDITIONAL STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

A. **TMG's Website Content.**

1. TMG's website states that, "Max Cash Title Loans can figure out what lenders will offer you the most money at the most competitive rates. (Ex. 7, Printouts of Plaintiff's Website, "How Much Can I Get on a Title Loan," https://maxcashtitleloans.com/how-much-i-get-for-a-title-loan/; Ex. 25, Leighton Decl., ¶¶ 2-8.)

2. TMG's website reads: "see how much you can get without even calling anyone." (Ex. 3, TMG Production Documents, at TMG00053.)

3. TMG's website contains multiple images of people holding paper cash. (Ex. 7, Printouts from Plaintiff's Website, https://maxcash.com/cash-advance; https://maxcash.com/installment-loans; https://maxcash.com/personal-loans; https://maxcashtitleloans.com/car-title-loans/; https://maxcashtitleloans.com/how-title-loans-work/; https://maxcashtitleloans.com/online-title-loans/; https://maxcashtitleloans.com/title-loans-buyout/; https://maxcashtitleloans.com/title-loans-refinance/; Ex. 25, Leighton Decl., ¶¶ 2-8.)

4. TMG's website reads: "Get your Cash Fast." (Ex. 7, Printouts from Plaintiff's Website, https://maxcashtitleloans.com/car-title-loans/; Ex. 25, Leighton Decl., ¶¶ 2-8.)

B. **Third-Party Internet Usage.**

5. Various companies' websites, including companies that provide title loan brokerage services, continue to depict the phrase "Max Cash", such as MaxCashUSA, MaxCashExpress, Max Cash Home Buyer, Max Cash ATM, MaxCash Loans, and CarGurus which offers "Instant Max Cash Offers." (Ex. 6, Supplemental Third Party Usage, https://maxcashusa.com/; https://maxcashexpress.com/; https://maxcashhomebuyer.com/;

https://maxcashatm.com/; https://maxcashloans.com/; USB_00002298-2300; USB_00002336-38; Ex. 25, Leighton Decl., ¶¶ 2-8; Ex. 23, Leavy Decl., ¶¶ 2-3.)

6. REDACTED. (Ex. 3, TMG1379-80.)

### C. Other Registrations.

7. The Supplemental Register for the USPTO includes the following max-composite marks: 7077245, MAX REFI (Credit union services); 4957710, MAX TAX REFUND (income tax preparation); 5499725, MAX WORTH (purchasing used vehicles); 4887695, MAX SEED SOLUTIONS (seeds and related products); 3710736, MAXNEWS (magazine featuring news); 3413795, MAX BRITE (flashlights); 4255485, MAX MY SOCIAL SECURITY (financial consultancy); 5215564, MAX TAX SAVER (income tax preparation). (Ex. 8, USPTO Documents.)

8. The USPTO lists the following marks that include the word "cash": 4579139, JUST CASH (vehicle title loan services); 5038862, X-PRESS CASH (arranging of loans); 6207746, PRIORITY CASH (credit and loan services); 6258442, DAILY CASH (credit card transaction process services); 4200691, NATIONAL CASH (ATMs); 6854180, READY CASH (cash and liquid asset management. The above marks were registered on the Supplemental Register or have only been registered based on a claim of secondary meaning. (Ex. 8, USPTO Documents.)

9. In addition, the mark, CASH MAXIMIZER (financial investment services), serial number 86916284 was refused as merely descriptive. (Ex. 8, USPTO Documents.)

### D. U.S. Bank's Survey Evidence.

10. Survey expert Hal Poret performed a consumer survey on the important of the term "max cash" on consumer decisions regarding the Accused Cards (the "Attribution Survey

-16-

Report"). A true and correct copy of Mr. Poret's Attribution Survey Report, dated January 2023, is attached here as Exhibit 9, which includes a summary of the results at page 22.

### E. TMG's Financial Information.

11. TMG produced its profit and loss records exported from QuickBooks that provide net ordinary income for each year. A summary of that production is attached here. (Ex. 10, Summary of TMG's Net Ordinary Income; Ex. 11, TMG Production at TMG01024-41; Ex. 19, Deposition of Fred Winchar, 205:22-208:7.)

### F. U.S. Bank's Financial Information.

12. U.S. Bank's profit and loss statements show approximately **REDACTED** in revenue and approximately **REDACTED** in costs and expenses. (Ex. 13, U.S. Bank's Second Supplemental Response to Plaintiff's Interrogatory No. 1, dated 8/26/22 at 6.)

13. U.S. Bank's witnesses testified that **REDACTED**. (Ex. 18, Deposition of John Lam, 181:15-182:3.)

14. U.S. Bank accounts for provision expense in its public financials for its entire loan portfolio, including in its annual reports and other SEC filings. (Ex. 14, U.S. Bank 2021 Annual Report at 5 (provision expense in Financial Summary) and 23 (discussing provision expense); Ex. 15, U.S. Bank 2023 Second Quarter 10Q at 3 (provision expense in Condensed Income Statement); Ex. 25, Leighton Decl., ¶ 10.)

15. Provision Expense represents the portion of lent money that a bank does not expect to be repaid. (Ex. 16, Arst Report at 24; Ex. 17, Arst Dep., 29:17-23; 71:6-11.)

16. At the time of making a loan, GAAP requires U.S. Bank to record an expense equal to the amount of that loan which is not expected to be repaid. (Ex. 16, Arst Report at 29; Ex. 17, Arst Dep., 77:6-78:3.)

17. Prior to the implementation of the Current Expected Credit Loss (CECL) methodology, ███████████████REDACTED███████████████ ██████████████ (Ex. 12, U.S. Bank's Answers to Plaintiff's Fourth Set of Interrogatories, Interrogatory No. 11 at p. 6, dated 7/5/22.)

18. ███████████████REDACTED███████████████
████████████████████████████████████████████
████████████████████████████ (Ex. 18, Lam Dep. at 159:20-160:23.)

**G.  Treatment of Provision Expense by the Federal Reserve.**

19. In an annual Congressional report, the Federal Reserve includes provision expense when reporting on the "profitability" of credit cards. (Ex. 22, Report to Congress on Profitability of Credit Card Operations of Depository Institutions, July 2023 at 2-5, available at https://www.federalreserve.gov/publications/credit-card-profitability.htm; Ex. 25, Leighton Decl., ¶ 9.)

20. Appendix A to the Federal Reserve "Federal Reserve Supervision and Regulation Report" states that "Provisions are recorded as an expense item on the bank's income statement." (Ex. 21, Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Supervision and Regulation Report* (Nov. 17, 2022) at 39, https://www.federalreserve.gov/publications/2022-november-supervision-and-regulation-report-appendix-a.htm; Ex. 25, Leighton Decl., ¶ 9.)

21. The Federal Reserve recognizes that the old accounting standard delayed recognition of credit losses and resulted in provision expense that were "too little" and "too late." (Ex. 16, Arst Report at 28; Ex. 20, Federal Reserve FAQ at 3, https://www.federalreserve.gov/supervisionreg/topics/faq-new-accounting-standards-on-financial-instruments-credit-losses.htm; Ex. 25, Leighton Decl., ¶ 9.)

Dated: September 21, 2023

Respectfully submitted,

By: /s/ Robert D. Leighton

Robert D. Leighton
Harleen Kaur
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000
Robert.Leighton@goldbergkohn.com
Harleen.Kaur@goldbergkohn.com

*Attorneys for U.S. Bank National Association*